**Nicolo SAN FILIPPO**

v.

**John F. MULCAHEY, District Director of Immigration and Naturalization Service.**

Civ. No. 58–81.

United States District Court
D. Massachusetts.

Nov. 24, 1958.

See, also, Cir., 261 F.2d 260.

Samuel A. Bithoney, Boston, Mass., for plaintiff.

Anthony Julian, U. S. Atty., George H. Lewald, Asst. U. S. Atty., William F. Wall, Immigration & Naturalization, Boston, Mass., for defendant.

ALDRICH, District Judge.

This is a petition for a writ of habeas corpus brought against the District

Director of the Immigration and Naturalization Service. Petitioner is admittedly an alien who entered the United States in June, 1957, on a temporary permit, as a member of the crew of a foreign vessel, and overstayed his leave.[1] He was arrested in September, 1958, and charged with being an excludable alien under section 212(a)(20) of the Immigration and Nationality Act, 8 U.S.C.A. § 1182(a) (20), and therefore deportable under section 241 (a) (1) of that act, 8 U.S.C.A. § 1251(a)(1). After a hearing he was found to be deportable, but was given permission to depart voluntarily. Thereafter he sought an administrative review. His appeal was dismissed, and not having complied with the order when he was about to be deported he brought this petition. Admittedly petitioner has no visa, and is deportable, but he claims that the hearing was in violation of his rights under the due process clause, and more specifically, under section 242(b), 8 U.S.C.A. § 1252(b). He claims that he should not have been found to have entered the United States with the intention of remaining here and obtaining work, and that he is entitled to a discharge and a new hearing.

Petitioner's case revolves entirely upon his alleged failure to understand the interpreters, both of whom were trained primarily in so-called classical Italian, and in the northern dialect, while he is a Sicilian, with a different dialect, and, in addition, was "nervous." As a result of this he claims he did not know that he requested a speedy hearing, waived counsel, admitted all charges, and asked to be allowed to take himself back to Italy forthwith, rather than be deported.

■ I have read the transcript of the proceedings. If what petitioner claims is true, a callous fraud has been attempted. Petitioner's purported answers at the hearing are not simply "yes," but in many instances are fully responsive, such as, "I will proceed without the attorney,";[2] "I understand"; "Yes, it relates to me and I have a copy"; "I do not deny it because I am not here regular"; "Yes, I understand. I do not wish to be deported. I want to pay my own way and [sic] back to my mother's home." I have heard this interpreter, who has been interpreting for the Service for eighteen years, and I do not find her either inexpert, or untruthful. In view of this I find also that the statement of similar import allegedly given the preceding day is equally accurate. I find that whatever differences there are between the southern and northern dialects were matters within the competence and common experience of these interpreters.

Conversely, I find petitioner's testimony highly unreliable. For example, on the first day of trial he stated, through his own chosen interpreter, that his reason for remaining in this country was he did not care for conditions on board ship, that he liked this country, and decided to stay ashore. The second trial day he said he liked it aboard ship, except for the food, and that when he was intoxicated ashore the ship sailed and left him unexpectedly, and he was "surprised" and "disappointed." While the issue may be before me only indirectly, I find on his own testimony petitioner deliberately jumped ship in order to enter this country and work. Of more direct importance, I find there was no misrepresentation or duress, that his testimony that the interpreter told him he would have to wait in jail for three weeks if he wanted counsel is untrue, that he consciously waived counsel because he knew he had no defense and wanted to get the matter over with, and that he adequately understood what transpired at the hearing.

1. An offense punishable by imprisonment up to six months. 8 U.S.C.A. § 1282 (c).

2. This particular answer petitioner admits having given, but claims he made it as a result of prior misrepresentation or duress.

It may be asked why, if petitioner was so consciously complaisant at the deportation proceedings, have the administrative appeal, and eventually this action, been so vigorously prosecuted. There is an answer to this. For some months petitioner has been keeping company with a local lady, not yet a citizen. Apparently there has been some talk of marriage. I believe her family are either the instigators of the present proceedings, or at least are the cause of a change of mind by petitioner. Even if petitioner has changed his mind, which would be the more favorable interpretation, this does not alter the fact that originally he was entirely willing to have his matter disposed of, and return home where he knew he belonged, and that the proceedings were complete and regular and well understood.

In addition to all this, it seems to me that as matter of law it is questionable how petitioner's rights could be said to have been prejudiced so as to justify a new hearing. Cf. Dengeleski ex rel. Saccardio v. Tillinghast, 1 Cir., 65 F.2d 440; Sumio Madokoro v. Del Guercio, 9 Cir., 160 F.2d 164, certiorari denied 332 U.S. 764, 68 S.Ct. 68, 92 L.Ed. 349; Couto v. Shaughnessy, 2 Cir., 218 F.2d 758, certiorari denied 349 U.S. 952, 75 S.Ct. 879, 99 L.Ed. 1276; In re Raimondi, D.C.N.D.Cal., 126 F.Supp. 390. Even if he could establish that he did not enter the United States as an immigrant, that is, as one who had the forthwith intention of living and working here, his counsel concedes, as he must, that petitioner is an alien without visa or permit, and that the inevitable result of another proceeding or hearing is eventual deportation. I asked counsel what would be the good of this, and he said "something might be done" in the meantime, such as a special act of Congress. I question whether this is part of the due process guaranteed to aliens. However, this question need not be decided, so far as the present order is concerned.

The petition is dismissed.

On Application for Bail Pending Appeal.

Following the entry of judgment dismissing the petition, petitioner filed a notice of appeal and moved to be released on bail pending appeal. He says that under, or regardless of, section 242(c) of the Immigration and Nationality Act, 8 U.S.C.A. § 1252(c), I have discretionary power to make such an order. I will assume that he is correct. See Pino v. Nicolls, 1 Cir., 211 F.2d 393, where the Court of Appeals left this question undecided.

In my original opinion I questioned whether petitioner had a legal basis for his petition. It has now been found that, in any event, he had no factual basis. This finding was amply supported, and I do not recall even a questioned ruling on evidence. I am compelled to the conclusion that the appeal is purely frivolous, and filed simply for the purpose of postponing the date when the respondent will eventually be able to accomplish the deportation.

If petitioner is released on bail, he will be able to enjoy further the freedom of the country, to which he has not even a colorable claim, simply by virtue of filing an appeal which is equally transparent. The processes of the court are not intended for such purpose. Conceivably there may be, as petitioner suggests, extra-judicial means by which his illegal entry may be made lawful. I cannot prevent him from seeking to gain opportunity for this by filing a habeas petition, which, if it had been successful, would merely have obtained him a new administrative hearing leading to the same outcome, and then, after a court hearing and finding against him, further taking up the time of the court by a frivolous appeal, but I certainly will not encourage such procedure by giving him the additional relief of overriding an administrative determination that he was not to be admitted to bail.

The application is denied.